[No. 84319-8.   En Banc.]
Argued May 3, 2011.     Decided July 21, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. DEAN MARTIN
LORMOR, *Petitioner*.

*Thomas E. Doyle*, for petitioner.

*Jon Tunheim, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

*James M. Whisman* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1    C. JOHNSON, J. — This case asks us to determine whether the removal of a person from the courtroom, under the facts in this case, was a closure in violation of the right to a public trial, and, if so, whether such "closure" can be considered too trivial as to implicate a defendant's constitutional rights. We hold that the exclusion of one person is not a closure that violates the defendant's public trial right but instead is an aspect of the court's power to control the proceedings. In this case, under an abuse of discretion standard, the trial court judge's removal of the defendant's young daughter was not unreasonable. Because there was no closure and no abuse of discretion, we affirm the conviction. Finally, we reject, under these facts, the Court of Appeals' holding that embraced a trivial standard in regard to court closures and reserve such a discussion for another day.

## FACTS AND PROCEDURAL HISTORY

¶2 Dean Lormor was arrested following a domestic disturbance, and during his jail intake, a small bag was found in his pants pocket. The bag contained methamphetamine residue. Lormor was charged with unlawful possession of a controlled substance.

¶3 Lormor's daughter, who was four days shy of her fourth birthday, was excluded from the courtroom before trial. The daughter, who was terminally ill, was confined to a wheelchair and required a ventilator to breathe. Before trial, the prosecutor brought the matter up because Lormor had either talked to or near one of the jurors regarding his daughter. This conversation followed:

MR. SMITH: Your Honor, thank you. The first issue is -- we talked at sidebar about this, and just for the record, there was some indication that the defendant either talked to or talked in front of one of the potential jurors and members of the panel regarding his daughter, and so I -- I know the defendant has some criminal history, but I don't know whether he's ever been through a trial or not. I'd ask the Court to instruct him to not discuss this or anything around the jurors that have been chosen. That's my first issue.

THE COURT: Ms. Murphy, do you wish to be heard?

MS. MURPHY: No, Your Honor. I have no objections to that request.

THE COURT: Okay. Mr. Lormor, I didn't really particularly in the presence of all the jurors want to inquire into the report that you were overheard making some comment in disappointment that your daughter was excluded from the courtroom. I simply want to emphasize to you what I think I've already said, the response to that, and that is you can't have direct contact with or discuss any aspect of your predicament in the presence of others outside of court session unless you're given permission to do so. I would ask that you respect that limitation, and I understand that your daughter was initially here. She is unfortunately in a medical condition that requires her to be in a wheelchair and to be on apparently breathing assistance.

THE DEFENDANT: Ventilator, yes.

THE COURT: I don't know how old she is, but she appears to me to be of adolescent years, but I don't know what her age is.

THE DEFENDANT: She'll be four on the 29th.

THE COURT: So she is even younger than adolescent years. I made the decision she should not be in the courtroom for a number of reasons: Number one, at that age I don't know how much she would understand of the proceedings. Two, given the setup I could even hear at the bench the ventilator operating, and I concluded that would be an inappropriate distraction and frankly difficult for her as it would be potentially distracting for the jury.

And so that's the decision I've made. And I have empathy for her circumstances as well as yours in that regard, but I just

don't think it's appropriate for a young person to be in this kind of a controlled setting, and I did hear some sounds from her which are perfectly understandable. I don't want in any way to limit her need to express herself for assistance or how she's feeling or anything else, but I just believe that would serve as an inappropriate distraction to the process and so that's why I've excluded her, and I want you to know that I don't take that lightly but I would do that in any type of case under the circumstances unless she were a necessary witness and was competent to testify, which given her tender years she would not be under the evidence rules of the court.

Report of Proceedings (RP) (Sept. 24, 2008) at 21-23. The prosecutor requested that Lormor be precluded from discussing his daughter and her condition. Counsel and defendant acquiesced, but Lormor had concerns about eventual sentencing because he was hoping to accompany his daughter to Disneyland with the Make-A-Wish Foundation. The following is the only other place in the record where the exclusion is discussed:

THE COURT: Well, we'll cross that eventual bridge when we come to it, and I take a lot -- a much different position on who can or can't be in the courtroom when we're not in the jury trial mode. And so I am reserving in the defense the right to re-visit this issue once we have concluded the jury part of this case. If there is a finding of not guilty, that ends it. If there is a guilty finding and there's -- are further proceedings and without the jury, my position will be significantly different regarding the presence of others in the courtroom including the defendant's daughter.

So I've already made my reasons known for excluding Mr. Lormor's daughter. I'll maintain them. I think they respond to counsel's concerns, and so I would direct, however, that counsel or the defendant or any witnesses not make reference to the status of defendant's daughter without further alerting the court and outside the jury's presence having a discussion as to whether such can be done before any mention of it takes place in front of the jury.

RP (Sept. 24, 2008) at 24-25. Lormor was convicted on the possession charge, and he was sentenced to 24 months. He

was allowed to go to Disneyland with his daughter before serving his sentence.

¶4 On appeal, Lormor argued the trial court violated his right to a public trial, as well as the public's right to open courts, in excluding Lormor's daughter without first considering the *Bone-Club* factors. *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). He additionally argued ineffective assistance of counsel because his attorney failed to object to the exclusion, as a cautionary measure, should the Court of Appeals conclude that he waived the error at trial by not objecting to it. The appellate court determined that, although the exclusion was a closure, the trial court's actions did not implicate Lormor's right to a public trial. Relying on federal case law, the appellate court held that even a problematic courtroom closure could be too trivial to violate the Sixth Amendment to the United States Constitution, if, as was the case here, none of the interests served by the right were involved. *State v. Lormor*, 154 Wn. App. 386, 393, 224 P.3d 857 (2010). Lormor appealed to this court, and we granted review. *State v. Lormor*, 169 Wn.2d 1010, 236 P.3d 206 (2010).

## ISSUES

¶5 1. Did the exclusion of Lormor's daughter constitute a closure, and if so, in violation of Lormor's right to a public trial?

¶6 2. Was Lormor denied effective assistance of counsel?

## ANALYSIS

¶7 Whether the right to a public trial has been violated is a question of law reviewed de novo. *State v. Momah*, 167 Wn.2d 140, 147, 217 P.3d 321 (2009) (citing *Bone-Club*, 128 Wn.2d at 256). There is a strong presumption that courts are to be open at all trial stages. A criminal defendant's right to a public trial is found in article I, section 22 of our state constitution and the Sixth Amend-

ment to the United States Constitution, which both provide a criminal defendant with a "public trial by an impartial jury." Additionally, article I, section 10 of our constitution provides that "[j]ustice in all cases shall be administered openly," granting the public an interest in open, accessible proceedings. *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 36, 640 P.2d 716 (1982). The public's right to an open trial is mirrored federally by the First Amendment. *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984). The public trial right is not absolute but may be overcome to serve an overriding interest based on findings that closure is essential and narrowly tailored to preserve higher values.[1]

¶8  In a recent opinion, the United States Supreme Court had the opportunity to revisit and clarify its court closure doctrine. In *Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010), the trial court, over objection, ejected an observer from the courtroom and closed the courtroom to all observers. The observer happened to be the defendant's uncle. At issue in *Presley* was the trial court's failure to consider alternatives to closure so the public could be accommodated, which the Court held it was required to do. What mattered to the Court was that the entire process of choosing a jury was closed to *all* potential spectators. It seemed to be the trial court's general practice to exclude everyone from voir dire and, under the Supreme Court of Georgia's reasoning, closure of voir dire

---

[1] To determine if closure is appropriate, the trial court is required to consider the following factors and enter specific findings on the record to justify any ensuing closure: (1) The proponent of closure must show a compelling interest and, if based on anything other than defendant's right to a fair trial, must show serious and imminent threat to that right; (2) anyone present when the motion is made must be given an opportunity to object; (3) the least restrictive means must be used; (4) the court must weigh the competing interests; and (5) the order must be no broader in application or duration than necessary. *Bone-Club*, 128 Wn.2d at 258-59 (quoting *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)). These are consistent with the factors required by *Waller v. Georgia*, 467 U.S. 39, 47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984), although a recent decision, *Presley v. Georgia*, 558 U.S. 209, 130 S. Ct. 721, 724, 175 L. Ed. 2d 675 (2010), clarifies that the trial court must, sua sponte, consider reasonable alternatives to closure.

would always be permitted for any reason. But under the United States Supreme Court's cases, such an approach is inconsistent with the requirements of the Sixth Amendment because courts are required to take every reasonable measure to accommodate public attendance at criminal trials. *Waller v. Georgia*, 467 U.S. 39, 47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).[2] Thus, should a closure be necessary, the standards announced in *Waller*, or our equivalent, *Bone-Club*, 128 Wn.2d at 258-59, must be considered, including any reasonable alternatives to closure.

¶9 These rules come into play when the public is fully excluded from proceedings within a courtroom. *Bone-Club*, 128 Wn.2d at 257 (no spectators allowed in courtroom during a suppression hearing); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 807-08, 100 P.3d 291 (2004) (entire voir dire closed to all spectators); *State v. Brightman*, 155 Wn.2d 506, 511, 122 P.3d 150 (2005) (entire voir dire closed to all spectators); *State v. Easterling*, 157 Wn.2d 167, 172, 137 P.3d 825 (2006) (all spectators, including codefendant and his counsel, excluded from the courtroom while codefendant plea-bargained). Additionally, we have found the public trial right implicated when individual jurors are privately questioned in chambers. *Momah*, 167 Wn.2d at 146; *State v. Strode*, 167 Wn.2d 222, 224, 217 P.3d 310 (2009). The situation before us is rather different.

¶10 Lormor's trial was conducted in an open courtroom. No showing is made that public attendance during the trial, or at any other stage, was prohibited. While it is unclear from the record whether there were any other observers in the courtroom, what is clear is that only one person was excluded, and there was no general prohibition for spectators or any other exclusion of the public. Our cases establish

---

[2] *Waller* provides standards that courts are to apply before excluding the public from any stage of a criminal trial: (1) the party seeking the closure must advance an overriding interest likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) the trial court must make findings adequate to support the closure. *Waller*, 467 U.S. at 48.

when a closure occurs. For example, Lormor's entire family was not excluded as occurred in *Orange*, 152 Wn.2d at 807. The doors were not closed to all spectators as happened in *Brightman*, 155 Wn.2d at 511. The defendant was not prohibited from attending a portion of the trial like the defendant in *Easterling*, 157 Wn.2d at 172. Nor was any part of the proceeding conducted in an inaccessible location such as the judge's chambers as happened in both *Momah*, 167 Wn.2d at 146, and *Strode*, 167 Wn.2d at 224. Factually, the exclusion of one person, without more, is simply not a closure under those scenarios.

¶11 Rather, a "closure" of a courtroom occurs when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave. This does not apply to every proceeding that transpires within a courtroom but certainly applies during trial and extends to those proceedings that cannot be easily distinguished from the trial itself. This includes pre- and posttrial matters such as voir dire, evidentiary hearings, and sentencing proceedings. This definition is likely underinclusive and may be expanded on by later cases with different facts. But, with this minimal definition in place, and under these facts, we reject the holding of the Court of Appeals that a closure occurred during Lormor's trial.[3]

¶12 Since we find that no closure exists, we analyze this case as the trial court did, as a matter of courtroom operations, where the trial court judge possesses broad discretion. In addition to its inherent authority, the trial court, under RCW 2.28.010,[4] has the power to preserve and

---

[3] Lormor additionally argues he received ineffective assistance of counsel because his counsel failed to object to the exclusion of his daughter. This claim coincides with Lormor's public trial right arguments. Because we do not find the exclusion of Lormor's daughter to be a closure, this claim necessarily fails.

[4] In full, RCW 2.28.010 provides, "Every court of justice has power—(1) To preserve and enforce order in its immediate presence. (2) To enforce order in the proceedings before it, or before a person or body empowered to conduct a judicial investigation under its authority. (3) To provide for the orderly conduct of proceedings before it or its officers. (4) To compel obedience to its judgments,

enforce order in the courtroom and to provide for the orderly conduct of its proceedings. The power to control the proceedings must include the power to remove distracting spectators, or else it would be meaningless. Any other rule would leave a trial court judge unable to keep the order necessary for a fair proceeding. And it would make little sense to engage in a *Bone-Club* or *Waller* analysis every time an unruly spectator is ejected from the courtroom, and, given our definition of "closure," no such analysis is required.

¶13 The discretion exercised in such an instance is similar to an evidentiary ruling. In fact, the trial court has a similar power of exclusion under ER 615: "At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Evidentiary rulings are reviewed for abuse of discretion and reversed only if the " 'exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons.' " *In re Det. of Post*, 170 Wn.2d 302, 309, 241 P.3d 1234 (2010) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). Because the exclusion of one spectator is similar to the exclusion of a witness, we adopt this well-settled and widely understood standard of review. This comports with the only other time we have addressed the removal of one spectator. *See State v. Gregory*, 158 Wn.2d 759, 815-16, 147 P.3d 1201 (2006) (no abuse of discretion when spectator briefly removed because judge suspected witness tampering). A trial court judge should, of course, exercise caution in removing a spectator, making sure to articulate the reasons on the record, and taking into particular account the defendant's right to have family present. The removal should be sup-

---

decrees, orders and process, and to the orders of a judge out of court, in an action, suit or proceeding pending therein. (5) To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto. (6) To compel the attendance of persons to testify in an action, suit or proceeding therein, in the cases and manner provided by law. (7) To administer oaths in an action, suit or proceeding pending therein, and in all other cases where it may be necessary in the exercise of its powers or the performance of its duties."

ported by an adequate explanation that can be reviewed. For example, we can imagine situations where a judge may exclude someone from the courtroom for disruptive or distractive reasons, such as talking on a cell phone or listening to loud music on an iPod. In some instances, the distracting quality will be obvious and little explanation will be needed. For instances where it is not, more will be required to facilitate review.

¶14 Under an abuse of discretion standard, the record establishes the basis for the removal of Lormor's daughter and was not an abuse of discretion. The trial court judge discussed the removal on the record and gave his reasons for doing so. The girl's ventilator was loud, which could understandably interrupt court proceedings. Moreover, Lormor's daughter was making other noises, which, while entirely appropriate for her age and likely necessary to her well-being, the trial court judge felt would be distracting during trial. The record is adequate for review and nothing suggests it was manifestly unreasonable to exclude this young child.

¶15 Relying on federal case law, the Court of Appeals held the situation here to be a trivial closure. *State v. Lormor*, 154 Wn. App. 386, 224 P.3d 857 (2010). First, it recognized that Washington law does not define "closure," but federal circuit courts treat, under some circumstances, the exclusion of family members as a closure under the Sixth Amendment. Then, the appellate court discussed *United States v. Perry*, 375 U.S. App. D.C. 238, 479 F.3d 885 (2007), where the defendant's eight-year-old son had been brought to court because schools were closed due to inclement weather. The trial court excluded the child, reasoning the only motive for having him there was to evoke sympathy. On appeal, the circuit court concluded that even a problematic courtroom closing can be too trivial to amount to a violation of the Sixth Amendment and such a closure is "trivial" when it does not implicate the values served by the Sixth Amendment. The son's presence would not ensure that the judge and prosecu-

tor carried out their duties responsibly, discourage perjury, or encourage any witnesses to come forward. In the case before us now, the Court of Appeals found the same to be true of Lormor's young daughter, thus the closure was trivial. We have already rejected the conclusion that this case involves a closure and is more properly analyzed as a matter of courtroom operations.

¶16 While this court has occasionally suggested that a closure might be trivial or de minimis, we have not yet been presented with a case or facts that warrant the adoption of this rule. *Strode*, 167 Wn.2d at 230; *see also Easterling*, 157 Wn.2d at 180-81 ("Even if we were to indicate a tolerance for so-called 'trivial closures,' the closure here could not be placed in that category because it was deliberately ordered and was neither ministerial in nature nor trivial in result."); *Brightman*, 155 Wn.2d at 517 ("Thus, even though a trivial closure does not necessarily violate a defendant's public trial right, the closure here was analogous to the closures in *Bone-Club* and *Orange*."). But the "trivial" standard, as it is generally articulated by circuit courts, relies in most cases on an inadvertent act, which is not the situation here.[5]

## CONCLUSION

¶17 Under the facts of our case, we disagree with the Court of Appeals' discussion of trivial closures. The exclusion of one courtroom spectator in this case is not a court closure and does not implicate a defendant's right to a public trial, so a triviality analysis, even if acceptable, does not apply. A trial court has the inherent, as well as statutory, power to remove disruptive spectators from the courtroom. The use of that power is reviewable for abuse of discretion. In this case, the trial court judge gave reasons on the record for the removal, the justification was not manifestly unreasonable or based on untenable grounds and was

---

[5] For a fuller discussion of trivial closures as found in other states and by circuit courts, see *Easterling*, 157 Wn.2d at 182-85 (Madsen, J., concurring).

not an abuse of discretion. Lormor's conviction is therefore affirmed.

MADSEN, C.J., and ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.