IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 72434-7-I
Respondent, )
) DIVISION ONE
v. )
)
MASON IOPU FILITAULA, ) PUBLISHED OPINION
)
Appellant. ) FILED: December 8, 2014
)
_____ )

BECKER, J. — Allowing litigants to exercise peremptory challenges in writing does not implicate the public trial right when a public record is kept showing which jurors were challenged and by which party.

On July 23, 2011, Joshue Tamblin exchanged argumentative text messages with his former girl friend, demanding the return of property. Her current boyfriend, Jeremy Gains, intervened in the text message exchange. Tamblin challenged Gains to a fight. Gains went to Tamblin's home with appellant Mason Filitaula and two other individuals. As soon as they arrived, Tamblin began hurling insults at Filitaula. Filitaula responded with his own insults. He then shot Tamblin in the ankle. This incident led to criminal charges against Filitaula. A jury convicted him of second degree assault and unlawful possession of a firearm.

Filitaula contends that his right to a public trial was violated when the parties exercised their peremptory challenges in writing.

After voir dire, counsel exercised their peremptory challenges on a written form while in an open courtroom. Members of the public and potential jurors were allowed to remain in the courtroom. The judge said:

> THE COURT: I want to thank the lawyers for your questions. I want to thank you all for your answers. As we have gone along, we have been exercising what we call challenges for cause, and so the benches are not quite as tight as they were this time yesterday. And now the lawyers are going to exercise what they call peremptory challenges, and while they're exercising their peremptory challenges, you all can be at ease and can even talk to each other, but I'm going to ask that, of course, you don't discuss the case and I'm going to ask that you remain right where you are and make sure that your numbers are visible on your clothing because they're going to still be operating by your pink tags.

After a pause in the proceedings, the judge reviewed the peremptory challenge form, announced the individuals who had been selected to make up the jury, and excused the remaining members of the jury pool.

Filitaula contends that allowing the peremptory challenges to be exercised in writing rather than orally was a court closure. He claims that because the public could not hear what was happening even if they could see that something was going on, the public was "denied the opportunity to scrutinize events." Brief of Appellant at 17.

Article I, section 10 of our state constitution provides, "Justice in all cases shall be administered openly." This provision grants the public an interest in open, accessible proceedings. State v. Lormor, 172 Wn.2d 85, 91, 257 P.3d 624 (2011). Additionally, a criminal defendant has a right to a public trial under Article

I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution. Whether a defendant's right to a public trial has been violated is reviewed de novo on direct appeal. State v. Smith, ____ Wn.2d ____, 334 P.3d 1049, 1052 (2014).

The public trial right "serves to ensure a fair trial, to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions, to encourage witnesses to come forward, and to discourage perjury." State v. Sublett, 176 Wn.2d 58, 72, 292 P.3d 715 (2012). Not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public. Sublett, 176 Wn.2d at 71. For example, no violation of the public trial right occurred in Sublett when the court considered a jury question in chambers. "None of the values served by the public trial right is violated under the facts of this case. . . . The appearance of fairness is satisfied by having the question, answer, and any objections placed on the record." Sublett, 176 Wn.2d at 77.

The other divisions of this court have rejected arguments that the exercise of peremptory challenges in writing necessarily implicates the public trial right. State v. Marks, No. 44919-6-II (Wash. Ct. App. Dec. 2, 2014); State v. Dunn, 180 Wn. App. 570, 321 P.3d 1283 (2014); State v. Love, 176 Wn. App. 911, 920, 309 P.3d 1209 (2013). We join them.

Filitaula argues that the parties should have been required to announce each challenge out loud as the peremptory challenge process was taking place.

3

He claims this is necessary so the public can know which party brought each peremptory challenge and in what order.

A record of information about how peremptory challenges were exercised could be important, for example, in assessing whether there was a pattern of race-based peremptory challenges. See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); Georgia v. McCollum, 505 U.S. 42, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992). The process the court used here ensured public access to such information. The written form on which the attorneys wrote down their peremptory challenges was kept and filed in the court record at the end of the case. It contains the names and numbers of the prospective jurors who were removed by peremptory challenge, lists the order in which the challenges were made, and identifies the party who made them. The record supplies no basis for an argument that the public lacked access to this information. See Smith, 334 P.3d at 1054 (sidebar conducted in a hallway but on the record did not implicate the public trial right, in part because "any inquiring member of the public can discover exactly what happened at sidebar.")

In summary, we do not accept Filitaula's description of the peremptory challenge process as a private, off-the-record proceeding. We conclude peremptory challenges need not be conducted orally to fulfill the public trial right. The procedure used here satisfied the court's obligation to ensure the open administration of justice.

Filitaula's second argument on appeal is that the trial court erred by allowing Tamblin to tell the jury the gang-related words he used when he insulted

Filitaula just before the shooting occurred. Tamblin testified that he yelled, "cuz it's on 23rd Block in the Hilltop," and that he used these words to identify himself with the Hilltop Crips Street Gang and to state where he was from. He said that Filitaula responded with verbal insults "like bitch and shit and stuff like that, but it was no gang related." Tamblin testified that he also called Filitaula a "slob," which he described in his testimony as a disrespectful term for "Bloods." Tamblin testified that Filitaula responded by proclaiming "you don't know no one from the Hill" and then shot him.

The issue of potential prejudice from the use of gang-related words first arose when Filitaula asked the court in a pretrial motion to prohibit the State from introducing expert witness testimony about gang activity in Pierce County. The court granted this request but declined to expand the ruling to prohibit Tamblin from using the terms "slob" and "Hilltop" or explaining what they referred to.

We review evidentiary rulings for an abuse of discretion. State v. Finch, 137 Wn.2d 792, 810, 975 P.2d 967, cert. denied, 528 U.S. 922 (1999). Evidence of gang affiliation is a special subset of prior bad act evidence. It can be admitted in a criminal trial if there is a connection between the crime and gang membership that makes the gang evidence relevant. State v. Scott, 151 Wn. App. 520, 526-27, 213 P.3d 71 (2009), review denied, 168 Wn.2d 1004 (2010). Filitaula claims that the terms "slob" and "Hilltop" were inadmissible and prejudicial because there was no evidence he was a gang member.

Unlike in Scott, here the testimony was not introduced to identify Filitaula as a gang member or to show that gang membership supplied a motive for him to

5

shoot Tamblin. The court allowed the testimony to show "the taunting back and forth" that preceded the assault and supplied a motive for it. Tamblin's testimony about how he insulted Filitaula not only went to the issue of motive, it was also admitted under the "res gestae" or "same transaction" exception to ER 404(b) because the conduct took place in the immediate timeframe of the assault. See State v. Lane, 125 Wn.2d 825, 831-33, 889 P.2d 929 (1995). Evidence is properly admitted under the res gestae exception if it is necessary to depict a complete picture for the jury. Lane, 125 Wn.2d at 832. As the trial court observed, "I think to understand what happened . . . at Tamblin's house, what was said is within bounds." Hearing the actual words Tamblin and Filitaula exchanged allowed the jury to perceive the escalating tension that led to the gunshot. Their statements to each other were part of the immediate context of the assault and were admissible under the res gestae exception.

Filitaula claims the prejudicial effect of terms like "slob" and "Hilltop" was so great that the trial court should have required that the testimony merely show that the two men insulted each other. Filitaula cites no authority, and we are aware of none, that requires trial courts to edit eyewitness testimony in a way that will sanitize the event being described. In the absence of any effort by the State to use Tamblin's statements as evidence that Filitaula was affiliated with a gang, the trial court did not abuse its discretion by concluding that the words actually spoken were not unduly prejudicial.

Affirmed.

WE CONCUR:

Becker, J.

Leach, J.

Dwyer, J.