2015 MAR -2 AM 10: 02


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71005-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| GERARDO ARELLANO-GAMA, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: March 2, 2015 |
| | ) | |

Cox, J. – A jury found Gerardo Arellano-Gama guilty of unlawful possession of a firearm in the first degree and driving under the influence (DUI). On appeal, he contends that the deputy prosecutor committed reversible misconduct during closing argument and that the trial court violated his public trial rights and imposed an unconstitutionally vague condition of community supervision. But Arellano-Gama did not object to the deputy prosecutor's argument, and he has failed to establish that a curative instruction would have been ineffective and that any misconduct was prejudicial. Nor did the trial court violate Arellano-Gama's public trial rights by permitting the exercise of peremptory challenges at a sidebar, or abuse its discretion by prohibiting Arellano-Gama, as a condition of community supervision, from possessing "drug paraphernalia." We therefore affirm.

During the early morning hours of January 6, 2013, Sylvia Alvarez heard a loud noise outside of her Mount Vernon apartment. Alvarez looked out her

window and saw a white car dragging a bumper and speeding into the parking lot. Alvarez called 911.

After the car parked, the driver got out and went into a nearby apartment. The driver appeared to be drunk from the way he was walking. A woman got out of the car from the passenger door. Alvarez identified Arellano-Gama in court as the driver.

A short time later, Arellano-Gama emerged from the apartment. The woman put him into the back seat of the white car and then got into the driver's seat. Police officers arrived just as the woman started to drive away.

Mount Vernon police officers Chester Curry and Zachary Wright responded to the 911 report. Upon arriving, Officer Curry saw a white Nissan Murano stopped partially off the roadway and straddling the sidewalk. The right front wheel rim was broken and the tire was flat.

As he approached the car, Officer Curry saw Arellano-Gama get out of the front passenger door and stagger toward him "on unsteady legs." When Arellano-Gama ignored his command to stop, Officer Curry restrained him on the shoulder. Arellano-Gama expressed a desire to go into the apartment. Officer Curry noticed that Arellano-Gama's eyes were bloodshot, that he smelled strongly of alcohol, and that he slurred his words.

While Officer Curry engaged Arellano-Gama, Officer Wright approached the Nissan and observed a small silver .22 caliber "pocket gun" lying on the front passenger seat. Officer Wright later determined that the gun was loaded. When

Officer Wright informed Officer Curry about the gun, Arellano-Gama responded, "that's nothing" or "that's no big deal."

The officers arrested Arellano-Gama and transported him to the station for a breath test. The two tests showed blood alcohol levels of .215 grams per milliliter and .242 grams per milliliter.

The State charged Arellano-Gama with DUI and unlawful possession of a firearm in the first degree.[1]

At trial, Arellano-Gama testified that he spent the evening before his arrest at a bowling alley. He explained that the white Nissan belonged to his fiancée. Before driving to the bowling alley, he consumed two cups of brandy and cola in the car. He recalled having five or six beers at the bowling alley, but could not recall leaving. He could not remember anything until the officers tackled him and he took the breath tests at the police station. Arellano-Gama denied ever having seen the gun or knowing to whom it belonged.

The jury found Arellano-Gama guilty as charged. The court sentenced him to 24 months on the firearm charge and 364 days, with 363 days suspended, on the DUI charge.

## Public Trial

Arellano-Gama contends that the trial court violated his public trial rights by allowing the parties to exercise their peremptory challenges during a sidebar

---

[1] The court dismissed a charge of being an alien in possession of a firearm for insufficient evidence.

conference. He argues that peremptory challenges are an integral part of jury voir dire and jury selection and must therefore be exercised in open court.

A criminal defendant has a right to a public trial under both the state and federal constitutions.[2] But "not every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public."[3] Consequently, before determining whether a public trial violation occurred, an appellate court first considers "whether the proceeding at issue was one to which the constitutional right to a public trial attaches."[4]

Here, the parties questioned the jury venire in open court and on the record. The court then announced that counsel would discuss jury selection at a sidebar conference. At the conclusion of the conference, the court identified in open court which jurors had been selected. The court also documented, as part of the public record, the identity of each juror challenged, the order of the challenges, and the party that exercised the challenge.

Washington appellate court have repeatedly held that identical or analogous procedures for peremptory challenges do not implicate a defendant's public trial rights.[5] We adhere to the analysis in these decisions. The trial court did not violate Arellano-Gama's public trial rights.

---

[2] State v. Lormor, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); see U.S. Const. amends. VI, XIV; Wash. Const. art. I, § 22.

[3] State v. Koss, 181 Wn.2d 493, 499, 334 P.3d 1042 (2014) (quoting State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012)).

[4] Koss, 181 Wn.2d at 499.

[5] See, e.g., State v. Dunn, 180 Wn. App. 570, 574-75, 321 P.3d 1283 (2014), review denied, 181 Wn.2d 1030 (2015) (the exercise of peremptory challenges at clerk's station does not implicate public trial right); State v. Marks, ___ Wn. App. ___, 339 P.3d 196

## Prosecutorial Misconduct

Arellano-Gama contends that prosecutorial misconduct during closing argument violated his right to a fair trial. He maintains that the deputy prosecutor used an improper "fill in the blank" argument that misstated the burden of proof and then highlighted the misstatements with a PowerPoint slide. Defense counsel did not object to the challenged comments or the slide.

A defendant claiming prosecutorial misconduct bears the burden of establishing that the challenged conduct was both improper and prejudicial.[6] Prejudice occurs only if "there is a substantial likelihood the instances of misconduct affected the jury's verdict."[7] We review misconduct claims in the context of the total argument, the evidence addressed, the issues in the case, and the jury instructions.[8] Where, as here, the defendant fails to object, we will not review the alleged error unless the defendant demonstrates that the misconduct was "so flagrant and ill intentioned that no curative instructions could have obviated the prejudice engendered by the misconduct."[9] This analysis

---

(2014) (exercise of peremptory challenges in writing at sidebar conference did not implicate public trial rights), petition for review filed; State v. Love, 176 Wn. App. 911, 919-20, 309 P.3d 1209 (2013) (challenges for cause and peremptory challenges at a sidebar do not implicate public trial rights), review granted in part, 181 Wn.2d 1029 (2015); see also State v. Filitaula, ___ Wn. App. ___, 339 P.3d 221 (2014) (exercise of peremptory challenges in writing, rather than orally, does not implicate defendant's public trial rights), petition for review filed; State v. Smith, 181 Wn.2d 508, 334 P.3d 1049 (2014) (sidebar conferences in hallway do not implicate public trial rights).

[6] State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).
[7] State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995).
[8] State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).
[9] State v. Belgarde, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).

focuses more on whether any resulting prejudice could have been cured, rather than on the flagrant or ill-intentioned nature of the comments.[10]

During closing argument, the deputy prosecutor informed the jury that the State had the burden of proving the elements of the crime beyond a reasonable doubt. He then attempted to explain that burden:

> So in doing that, you're applying that reasonable doubt standard. And you get an instruction about reasonable doubt, Instruction Number 3, which describes what reasonable doubt is. But it's a little bit circular. I like to look at it more of what that concept is and think about it in breaking it down. Reasonable means there has to be a reason. It's a doubt with a reason you can attach to it. In other words, you have to say why there's a reason that this doubt exists in my mind as a particular element. If you're going to find it's not proven beyond a reasonable doubt, if you don't have any reason that you can attach to that, that you can explain to your jurors then it's proven beyond a reasonable doubt, if there's not something you can attach to it.[11]

During this portion of the argument, the deputy prosecutor displayed a PowerPoint slide stating that reasonable doubt was "a doubt with a REASON you can attach to it" and "A REASON you can explain to your fellow jurors."[12]

Arellano-Gama contends that the highlighted comment was essentially identical to "fill in the blank" arguments that Washington courts have repeatedly found to be improper.[13] In State v. Emery, the deputy prosecutor argued that:

---

[10] State v. Emery, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).
[11] Report of Proceedings (Sept. 24, 2013) at 127-28 (emphasis added).
[12] Brief of Respondent at 11.
[13] See, e.g., Emery, 174 Wn.2d at 759; State v. Anderson, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009).

> [I]n order for you to find the defendant not guilty, you have to ask yourselves or you'd have to say, quote, I doubt the defendant is guilty, and my reason is blank. A doubt for which a reason exists. If you think that you have a doubt, you must fill in that blank.[14]

Our Supreme Court concluded that the "fill in the blank" argument was improper because it implied that the jury "must be able to articulate its reasonable doubt by filling in the blank."[15] The court found that this argument "subtly shifts the burden to the defense" and "could potentially have confused the jury about its role and the burden of proof."[16]

Contrary to the State's assertions, we agree with Arellano-Gama that the deputy prosecutor's remarks were analogous to the improper argument in Emery. First, the deputy prosecutor incorrectly suggested that the jury had to articulate a basis for any reasonable doubt. The deputy prosecutor then informed the jury that if it could not articulate a basis for reasonable doubt -- "that you can explain to your jurors" – "then it's proven beyond a reasonable doubt." As in Emery, the argument improperly suggested that the jury could acquit only if it could articulate a reason for doubt.

Although the deputy prosecutor's comments were improper, Arellano-Gama must also demonstrate that a curative instruction could not have obviated the prejudicial effect of the misstatements and that the argument had a substantial likelihood of affecting the jury verdict.[17] He fails to satisfy this burden.

---

[14] 174 Wn.2d at 750-51.
[15] Id. at 760.
[16] Id. at 760, 763.
[17] Id. at 761.

The Emery court concluded that the improper arguments were potentially confusing, but not "inflammatory."[18] Consequently, a timely objection could have cured any potential confusion or prejudice and permitted the trial court to reiterate the State's burden of proof.[19] In determining that the defendants could not show a substantial likelihood that the misstatements affected the jury's verdict, the court considered the context of the improper comments and jury instructions that correctly set forth the State's burden of proof.[20]

Here, as in Emery, the deputy prosecutor's misstatements formed a discrete and limited portion of the total argument. The deputy prosecutor repeatedly told the jury that the State bore the burden of proving the elements of the crime beyond a reasonable doubt. The court's instructions correctly informed the jury of the State's burden of proof, that the defendant "has no burden of proving that a reasonable doubt exists,"[21] and "to disregard any remark, statement, or argument that is not supported by the evidence or the law in [the court]s] instructions."[22]

Arellano-Gama argues that the PowerPoint slide emphasized the misconduct and exacerbated the resulting prejudice. But the single slide reproduced only a portion of the improper argument. A timely objection and

---

[18] Id. at 763.
[19] Id. at 764.
[20] Id. at 762-64.
[21] Clerk's Papers at 20.
[22] Id. at 17.

curative instruction could have negated any potential confusion and prejudice resulting from both the comments and the slide.

Given the discrete and limited scope of the misstatements, the State's repeated reliance on the correct burden of proof throughout the entire closing argument, and the trial court's instructions setting forth the correct burden of proof, Arellano-Gama has failed to establish that the improper comments were incurable and prejudicial.

### Sentencing Condition

Arellano-Gama contends that the trial court erred in imposing, as a condition of community supervision, a prohibition from possessing "drug paraphernalia." He argues that the term "drug paraphernalia" is unconstitutionally vague.

"[T]he due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct."[23] Statutes and other legal standards are unconstitutionally vague if they do not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed," or do not "provide ascertainable standards of guilt to protect against arbitrary enforcement."[24]

---

[23] State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008).
[24] Id. at 752-53.

When assessing vagueness, a court considers terms in the context of their use.[25] Because of the inherent vagueness of language, citizens may have to consult statutes and court rulings to clarify the meaning of a specific term.[26] Such sources are "presumptively available to all citizens."[27] If "persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite."[28] We do not accord a sentencing condition the presumption of constitutionality.[29]

We will overturn the trial court's imposition of a sentencing condition only for a manifest abuse of discretion.[30]

Arellano-Gama relies solely on State v. Sanchez Valencia,[31] in which the court held that a sentencing condition prohibiting the possession of "any paraphernalia that can be used for the ingestion or processing of controlled substances" was unconstitutionally vague.[32] The court concluded that the term "paraphernalia" was too broad to provide fair notice of prohibited conduct and failed to provide ascertainable standards to protect against arbitrary enforcement.[33]

---

[25] Id. at 754.
[26] Id. at 756.
[27] Id. (quoting State v. Watson, 160 Wn.2d 1, 8, 154 P.3d 909 (2007)).
[28] City of Spokane v. Douglass, 115 Wn.2d 171, 179, 795 P.2d 693 (1990).
[29] State v. Sanchez Valencia, 169 Wn.2d 782, 792, 239 P.3d 1059 (2010).
[30] Bahl, 164 Wn.2d at 753.
[31] 169 Wn.2d 782, 792, 239 P.3d 1059 (2010).
[32] Id. at 785.
[33] Id. at 794-95.

In determining that the term "paraphernalia" was unconstitutionally vague, the court in <u>Sanchez Valencia</u> expressly distinguished the more specific term "drug paraphernalia."[34] Moreover, the Uniform Controlled Substances Act expressly defines "drug paraphernalia":

> "[D]rug paraphernalia" means all equipment, products, and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance.[35]

The statutory definition not only includes a lengthy, non-exclusive list of specific items that constitute drug paraphernalia, but also imposes express intent requirements that the prohibited objects be "intended for use" in conjunction with controlled substances. The detailed statutory definition and intent requirements for "drug paraphernalia" serve to provide fair notice of the prohibited conduct and protect against arbitrary enforcement, the two deficiencies that the court in <u>Sanchez Valencia</u> identified for the term "paraphernalia." The condition prohibiting "drug paraphernalia" is not unconstitutionally vague.

Affirmed.

_Cox, J._

WE CONCUR:

_Dwyer, J._                    _Spearman, C.J._

---

[34] <u>Id.</u> at 794.
[35] RCW 69.50.102(a).