# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74951-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| EFRAIN ELIAS ALVARADO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 31, 2017 |
| | ) | |

MANN, J. — Efrain Alvarado appeals from his conviction for unlawful possession of a firearm, contending that his right to a public trial was violated when the trial court considered objections during closing argument at unrecorded sidebar conferences. Because the sidebars did not implicate Alvarado's public trial right, we affirm.

## FACTS

On October 6, 2015, Ashley West woke to a loud explosion that sounded like breaking glass. She went outside and saw that an upstairs window had been broken outward. West went upstairs to where her roommate, Irene Alvarado, had a room. West observed a large hole in Irene's[1] door, which lined up with holes in the bedroom door

---

[1] We refer to Irene Alvarado by her first name to distinguish her from her brother.

across the hall, which in turn lined up with the broken window. West also smelled "[a]lmost, like, a fireworks smell."

Standing outside Irene's locked door, West peered in through the large hole. She saw Irene in bed across the room, underneath the blankets. She also saw Irene's brother, Efrain Alvarado, sitting against a wall that was directly in the path of the holes. West asked Alvarado what happened, but Alvarado said nothing and had "a blank look on his face." When Irene opened the door, West could see that Alvarado was within arm's reach of a shotgun. Alvarado had a prior conviction for second degree assault and was prohibited from possessing a firearm.

The State charged Alvarado with unlawful possession of a firearm and the matter proceeded to trial. Following the close of evidence, the trial court instructed the jury regarding possession as follows:

> Possession means having a firearm in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item.

> In deciding whether the defendant had dominion and control over an item, you are to consider all the relevant circumstances in the case. A factor that you may consider, among others, includes whether the defendant had the immediate ability to take actual possession of the item.

The trial court also instructed the jury that "The defendant's mere proximity to the weapon and the knowledge of its presence alone do not prove constructive possession of a firearm."

The deputy prosecutor and defense counsel argued during closing about whether Alvarado had constructive possession of the firearm. During the State's rebuttal closing argument, the following exchange took place:

-2-

MR. NIELSEN [deputy prosecutor]: And Ms. Candler [defense counsel] talked about constructive possession. Right now, I am in actual possession of this Kleenex box. If somebody can – if this is my desk and somebody comes and sets that Kleenex box on my desk, now even without my touching it, I am in constructive possession of that Kleenex box. Okay? This is – this is not – the charge in this –

MS. CANDLER: Objection, Your Honor. May we approach?

THE COURT: Yeah, you'll need to. Why don't you come this way, folks.

(Sidebar was held off the record.)

MR. NIELSEN: So again, you heard from a number of witnesses. Look at what the evidence shows. Look at what the physical evidence shows, that which we know. That doesn't change. The shot through the door, through the other door and through the window, that hasn't changed. There is absolutely no evidence contradicting the defendant sitting with a gun right there. That's the evidence. That's what we show.

The deputy prosecutor continued to explain how, even if the jury did not find that Alvarado had actually possessed the shotgun, it could find constructive possession. The following exchange then took place:

MR. NIELSEN: What I was starting to say before is, again, based on defense argument, this charge is unlawful possession of a gun, of a firearm. It is not unlawful ownership of a firearm. It does not matter who owned that firearm.

What matters is he possessed that firearm. These are two different things. Anybody can own that firearm. Does not matter. What is unlawful is for him to possess it.

MS. CANDLER: Objection, Your Honor. May we approach?

MR. NIELSEN: I'm done if that's –

THE COURT: Let's have the sidebar anyway.

(Sidebar held off the record.)

THE COURT: Sounds like Mr. Nielsen has completed. Thank you, Mr. Nielsen.

No. 74951-0-I/4

MR. NIELSEN: Yes. Thank you, Your Honor.

The trial court immediately instructed the jury as follows:

> Members of the jury, just a reminder—there's been a couple of objections here during the closing argument—that evidence is what you determine it to be. It's not the statements by—what the attorney has said, and any statement made by either attorney is not the evidence. And if there's an argument that's beyond the evidence or beyond the instructions that you will have back in the jury room, you're to disregard those.

After the jury retired to deliberate, the trial court asked parties "Anything else we need to cover?" The deputy prosecutor stated "I don't think so, Your Honor." Defense counsel did not reply. Neither the trial court nor the parties described the sidebars for the record, nor does the record reflect the trial court's ruling on the objections.

A jury convicted Alvarado as charged. Alvarado appeals.

ANALYSIS

Alvarado contends that he was deprived of his constitutional right to a public trial when the trial court considered the two objections during unrecorded sidebar conferences. We disagree.

A criminal defendant has a right to a public trial under both the United States Constitution and the Washington State Constitution. State v. Lormor, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); U.S. Const. amend. VI; Wash. Const. art. I, § 22. Whether a defendant's public trial right has been violated is a question of law reviewed de novo. State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012).

To answer that question, the court engages in a three-part inquiry: "(1) Does the proceeding at issue implicate the public trial right? (2) If so, was the proceeding closed? And (3) if so, was the closure justified?" State v. Smith, 181 Wn.2d 508, 521, 334 P.3d 1049 (2014). If the court concludes that the right to a public trial does not apply to the

-4-

proceeding at issue, it need not reach the second and third steps in the analysis. Smith, 181 Wn.2d at 519.

"[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). To determine whether the public trial right attaches, we apply the "experience and logic" test. Sublett, 176 Wn.2d at 73. Under the experience prong, we consider whether the proceeding at issue has historically been open to the public. Sublett, 173 Wn.2d at 73. Under the logic prong, we ask "whether public access plays a significant positive role in the functioning of the particular process in question." Sublett, 176 Wn.2d at 73. If both prongs are satisfied, the public trial right attaches. Sublett, 176 Wn.2d at 73.

In Smith, the defendant argued that multiple sidebar discussions following evidentiary objections during trial violated his right to a public trial. Our Supreme Court held, based on the experience and logic test, that "reasonable and traditional sidebars used to avoid interruption of a trial" do not implicate the public trial right. Smith, 181 Wn.2d at 521. As to the experience prong, the court noted that sidebar conferences have historically occurred outside the view of the public, because of the practical difficulties involved with interrupting trial to send the jury to the jury room every time an evidentiary objection arose. Smith, 181 Wn.2d at 515. As to the logic prong, the court concluded that evidentiary rulings during traditional sidebars "do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness." Smith, 181 Wn.2d at 518.

In a footnote, the court in <u>Smith</u> emphasized:

We caution that merely characterizing something as a "sidebar" does not make it so. To avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record.

<u>Smith</u>, 181 Wn.2d at 516 n.10. The court later observed, "Critically, the sidebars here were contemporaneously memorialized and recorded, thus negating any concern about secrecy." <u>Smith</u>, 181 Wn.2d at 518.

Here, it appears that the purpose of the sidebar was to address an objection, a traditional subject area. And the context indicates that the trial court summoned the parties to the bench in order to avoid disrupting the flow of trial. Nevertheless, Alvarado argues that <u>Smith</u> does not apply because the sidebar conferences were not recorded, nor was the content of the discussion later placed on the record. Alvarado asserts that the sidebars may have involved matters of prosecutorial misconduct, which "are precisely the type of proceedings that must be subject to public scrutiny in order to assure fair trials and deter such misconduct."

However, we cannot speculate about the content of the sidebars other than the fact that they appear to have involved the deputy prosecutor's analysis of the theory of constructive possession. Parties to an unrecorded sidebar are obligated to ensure that a record of the ruling is made for appeal purposes and failure to make a record may preclude review. <u>State v. Koloske</u>, 100 Wn.2d 889, 896, 676 P.2d 456 (1984), <u>overruled on other grounds by State v. Brown</u>, 111 Wn.2d 124, 761 P.2d 588 (1988). In any event,

the sidebars here were brief.[2] And in response to the objections, the trial court merely cautioned the jury that it was to disregard any argument that was beyond the evidence or the instructions, and decide the evidence for itself. The record here raises no concerns that the sidebars jeopardized the fairness of the trial or the appearance of fairness essential to public confidence in the system.[3]

Because Smith controls the analysis here, we conclude that Alvarado's public trial right was not violated by the sidebar conferences.

In a pro se statement of additional grounds for review, Alvarado contends that West was an "unreliable witness" because her testimony at trial differed from the statement she gave to the police, and that he was denied his right to a fair trial because all of the jurors were white and he is not. But these allegations rest on matters outside the record and therefore cannot be raised on this appeal. See State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995).

Alvarado asks this court to deny appellate costs. We generally award costs to the substantially prevailing party on review. RAP 14.2. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial

---

[2] It is unclear from the record how long the sidebar conferences lasted. The fact that sidebars took place is not even noted in the clerk's minutes. However, the record does show that the jury retired to the jury room to deliberate only 15 minutes after the deputy prosecutor began his rebuttal closing argument.

[3] Alvarado analogizes his case to State v. Easterling, 157 Wn.2d 167, 137 P.3d 825 (2006), in which the court found the defendant's public trial rights were violated when a courtroom was closed during a codefendant's combined motion to sever and dismiss based on allegations the State had acted in bad faith. But the proceeding in Easterling "undermined the fairness of the process" because the defendant and his attorney were excluded from the hearing along with the rest of the public. Smith, 181 Wn.2d at 517. Here, in contrast, the record is clear that defense counsel was present at and participated in both sidebars.

No. 74951-0-I/8

circumstances have significantly improved since the last determination of indigency."

RAP 14.2. Alvarado was represented below by appointed counsel and the trial court found Alvarado indigent for the purposes of this appeal. The State argues that we should not presume Alvarado's continued indigency due to his youth and the relatively short length of his sentence. Under RAP 14.2, if the State has evidence indicating that Alvarado's financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____       _____
                                        Becker, J.