**FILED**
**NOVEMBER 30, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) | No. 37035-6-III |
| | ) | |
| DALLAS JOHN PAUL LANGE, | ) | |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |
| | ) | |

LAWRENCE-BERREY, J. — Dallas Lange seeks relief from his conviction and

sentence. He argues his constitutional right to a public trial was violated when a

corrections officer prevented his mother and her friend from entering the courtroom

during voir dire. Because the officer did not prevent the women from entering the

courtroom, we dismiss his personal restraint petition.

FACTS

A jury convicted Dallas Lange of first degree assault and the trial court thereafter

entered a judgment of conviction and sentence. In this personal restraint petition, Mr.

Lange argues his public trial right was denied when a corrections officer prevented his

mother, Janice Dougherty, and her friend, Violet Van Meter, from entering the courtroom

during voir dire.

The State responded by including a report from Corrections Officer Edgar Vega. Officer Vega provides courtroom security for Klickitat County Superior Court. He denied that he had prevented the women from entering the courtroom.

We transferred Mr. Lange's petition to Klickitat County Superior Court for a reference hearing in accordance with RAP 16.12. *See* Order Transferring Appeal to Superior Ct. for Reference Hr'g, *State v. Lange*, No. 36501-8-III (Wash. Ct. App. Mar. 31, 2021).

Ms. Dougherty, Ms. Van Meter, and Officer Vega testified at the reference hearing. After hearing their testimonies, the court entered findings of fact, which we now summarize:

Several prosecutors, defense attorneys, and defendants were in the courtroom deciding which case, among several, would proceed to trial that day. Ms. Dougherty and Ms. Van Meter were in the courtroom. After some time, it was decided that Mr. Lange's case would be heard. The trial court took a recess and the two women left the courtroom.

By the time the two women returned, prospective jurors had been summoned to the courtroom and it appeared to Ms. Dougherty that the jurors were sitting in all of the available courtroom seats. Officer Vega told both women that there were no available

seats in the courtroom and that the jurors were watching a video on jury service. He offered to alert them when seating became available.

Ms. Dougherty did not ask about standing in the courtroom. She testified she did not think she was physically capable of standing for an extended period while the jury selection process was underway. Officer Vega neither encouraged nor prohibited the women from standing in the back of the courtroom during jury selection nor did he ever remove them from the courtroom.

The two women returned to the courtroom after lunch and were able to observe the trial from opening statements through sentencing.

## ANALYSIS

VIOLATION OF THE RIGHT TO PUBLIC TRIAL

Mr. Lange contends that the court effectively closed the courtroom when Officer Vega told Ms. Dougherty and Ms. Van Meter there was no seating inside, thereby violating his right to public trial. We disagree.

Under the Sixth Amendment to the United States Constitution, a criminal defendant has a right to a public trial that extends to the voir dire of prospective jurors. *Presley v. Georgia*, 558 U.S. 209, 213, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010). That right "may give way in certain cases to other rights or interests" necessitating a courtroom

closure, but "[s]uch circumstances will be rare . . . ." *Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984). Whether the right to a public trial has been violated is a question of law reviewed de novo. *State v. Sublett*, 176 Wn.2d 58, 70, 292 P.3d 715 (2012).

Our Supreme Court has "enumerated five criteria that a trial court must consider on the record in order to close trial proceedings to the public." *State v. Wise*, 176 Wn.2d 1, 10, 288 P.3d 1113 (2012). The criteria are:

> 1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
> 4. The court must weigh the competing interests of the proponent of closure and the public.
> 5. The order must be no broader in its application or duration than necessary to serve its purpose.

*State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

Before determining whether a closure was proper in light of countervailing rights or interests, however, we must determine whether there *was* a closure. *See Sublett*, 176

4

Wn.2d at 71. The defendant bears the burden to show that the courtroom was closed to the public. *See State v. Njonge*, 181 Wn.2d 546, 556, 334 P.3d 1068 (2014). A courtroom closure "occurs when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011).

The purposeful exclusion of particular persons does not by itself constitute a courtroom closure. In *Lormor*, the trial court excluded the defendant's daughter from the courtroom before trial. 172 Wn.2d at 88. The daughter was not yet four years old and required a ventilator to breathe. *Id.* The court determined that given the noise from the ventilator, the daughter's need to audibly express herself for assistance, and her likely lack of understanding of the proceedings, she would be an inappropriate distraction. *Id.* at 88-89. On appeal, Lormor argued this exclusion violated his right to a public trial. *Id.* at 90.

The Supreme Court held that Lormor's public trial right was not implicated because there was no closure of the courtroom. *Id.* at 93. In arriving at this conclusion, the Court noted that while it was unclear "whether there were any other observers in the courtroom, what is clear is that only one person was excluded, and there was no general prohibition for spectators or any other exclusion of the public." *Id*. at 92.

5

A courtroom that is too full to admit more spectators is not closed by virtue of the fact that it is at capacity. In *Njonge*, the court told courtroom observers during pretrial proceedings that during the next day's jury selection process, everyone was welcome to watch but "'[t]he chance of all you being able to be here and observe are slim to none'" due to space constraints in the courtroom. 181 Wn.2d at 550. Despite there being no room for them to observe during jury selection, some family members of the victim waited at the courthouse for seats to become available in the courtroom. *Id.* at 551. After some jurors were excused in the morning, the bailiff informed the waiting family members of the available seats and they entered the courtroom after lunch to observe the remainder of voir dire. *Id.* On appeal, Njonge argued that the exclusion of observers during the morning portion of voir dire violated his right to a public trial. *Id.* at 555-56.

The Supreme Court rejected this argument, finding that the record did not establish that a courtroom closure occurred. *Id*. at 559. It noted that "[t]he only thing that is certain from the record is that there were space limitations in the courtroom. But the size of a courtroom alone cannot effect a closure." *Id.* at 557.

Here, Mr. Lange fails to demonstrate that the courtroom was either completely or purposefully closed to spectators during his trial. As an initial matter, the trial judge did nothing to exclude any member of the public. Even if we impute Officer Vega's actions

6

to the court, however, they do not rise to the level of a courtroom closure. In the reference hearing, the court found that Officer Vega did not remove the women from the courtroom. While he did not encourage them to enter the courtroom and stand in the back, neither did he deny them entry to the courtroom or otherwise discourage them from entering and standing in the courtroom. As in *Lormor* and *Njonge*, there was no general prohibition on spectators or exclusion of the public. All Mr. Lange has shown is that there was insufficient seating for everyone who wanted to be in the courtroom. As our Supreme Court made clear in *Njonge,* that alone is not enough to demonstrate that a courtroom is closed. Because Mr. Lange has failed to establish a courtroom closure that implicates his right to a public trial, we dismiss his personal restraint petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____      _____
Pennell, C.J.                         Siddoway, J.

7