FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2019 FEB -5 AM 10: 37

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 79068-4-I |
| | DIVISION ONE |
| KEVIN WAYNE FRANKLIN, | UNPUBLISHED OPINION |
| Petitioner. | FILED: February 5, 2019 |

CHUN, J. — Kevin Wayne Franklin raises numerous grounds for relief in his personal restraint petition. He claims the trial court violated his right to a public trial, admitted evidence obtained through an invalid search warrant, gave an improper jury instruction, and allowed inadmissible gang evidence. He further claims a witness gave improper opinion testimony, the prosecutor committed misconduct, and both his trial and appellate lawyers performed ineffectively. For the reasons discussed below, we deny the petition.

I.
BACKGROUND

In 2011, a jury convicted Franklin of drive-by shooting, first degree assault, and first degree unlawful possession of a firearm. The Court of Appeals affirmed Franklin's conviction. The opinion from Franklin's direct appeal contains a recitation of the underlying facts.[1] See State v. Franklin, No. 42027-9-II (Wash. Ct. App. April 30, 2013) (unpublished) https://www.courts.wa.gov/opinions/pdf/

---

[1] The analysis below presents additional facts as necessary.

D2%2042027-9-II%20%20Unpublished%20Opinion.pdf. The Supreme Court denied Franklin's petition for discretionary review.

Thereafter, Franklin filed this personal restraint petition. The Court of Appeals dismissed the petition as untimely. The Supreme Court then accepted discretionary review and determined Franklin timely filed the petition. Hence, we address the issues he has raised.

II.
ANALYSIS

The standards of review for direct appeals do not apply to personal restraint petitions. In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). For a court to disturb a settled judgment, the petitioner must meet a high burden. Coats, 173 Wn.2d at 132. To obtain relief through a personal restraint petition for constitutional errors, the petitioner must demonstrate actual and substantial prejudice. In re Pers. Restraint of Davis, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). For nonconstitutional claims, the plaintiff must show the error constitutes a fundamental defect resulting in a miscarriage of justice. Davis, 152 Wn.2d at 672. The petitioner must make these heightened showings by a preponderance of the evidence. In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

A.    Right to a Public Trial

Franklin claims the trial court closed the courtroom during voir dire without conducting a Bone-Club[2] analysis, thus warranting a new trial. The State argues

---

[2] State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995).

the court did not need to conduct a Bone-Club analysis because, while it removed certain family members, it did not close the courtroom to all spectators. Because the record indicates that the court did not close the courtroom and exercised caution when removing the family members, we determine it did not violate Franklin's right to a public trial.

During voir dire, Juror 51 told the court she heard family members of one of the defendants speaking about the case.[3] The court planned to ask Juror 51 about what she had heard, but grew concerned that she may feel intimidated if the family members remained in the courtroom during the questioning. The prosecutor told the judge that excluding the family members could raise an issue under Bone-Club. Franklin's counsel told the court, "From my perspective, Your Honor, I don't see it as closing the courtroom." The court recessed to research the Bone-Club issue.

After the recess, the court distinguished the situation from one requiring a Bone-Club analysis as follows:

> I think State v. Bone-Club was a situation where the courtroom was totally locked down and a few bystanders were allowed to stay, but in essence, the court was locked down.
>
> It's the Court's intention to not lock the courtroom. It's the Court's intention to make this only for the purposes of determining or allowing a juror to express, without any hesitation or potential for intimidation, what that juror heard regarding any conversation from the family members. The courtroom will be excluded from those family members for only that purpose and that purpose only and would be for a limited purpose and for a limited time and for a reason which this Court believes would ensure a fair trial for both sides. Not

---

[3] The court tried Franklin and Desmond Ray Johnson jointly as co-defendants. The record does not make clear whether the family members were Franklin's or Johnson's.

3

to limit the defendants' ability to have a public trial, but in order to promote both the State and the defendant's right to have a trial by jurors who are uninfluenced by any other outside process.

The prosecution and defense counsel agreed with the court. When defense counsel inquired about other members of the public being welcome inside the courtroom, the court said, "They can walk in at any time." Franklin's counsel said, "I have no disagreement with the Court's ruling." The court then stated, "Ladies and gentlemen, I would ask you at this point in time to briefly leave the courtroom so we can interview Juror No. 51." After the court questioned Juror 51 and other jurors who had heard the family members speaking, the court allowed the family members back into the courtroom. The record does not reflect whether there were other spectators in the courtroom during the questioning of the jurors.

Franklin contends the trial court's actions violated his right to a public trial. The public trial right derives from the Washington State constitution. Wash. Const. art. I, § 22 ("the accused shall have the right . . . to have a speedy public trial"); Wash. Const. art I, § 10 ("Justice in all cases shall be administered · openly."). The right safeguards the criminal justice system by ensuring public oversight of the administration of justice. State v. Wise, 176 Wn.2d 1, 6, 288 P.3d 1113 (2012). The right applies to voir dire proceedings, including the questioning of individual prospective jurors. Wise, 176 Wn.2d at 11.

But defendants do not have an absolute right to a public trial. State v. Bone-Club, 128 Wn.2d at 259. While a court may close its courtroom to the public, it must first conduct a five factor balancing test laid out by the Supreme

Court in Bone-Club. 128 Wn.2d at 258-59. If the trial court closes the courtroom without conducting a Bone-Club analysis, it commits "structural error for which a new trial is the only remedy." State v. Frawley, 181 Wn.2d 452, 459, 334 P.3d 1022 (2014).

However, "[the Bone-Club] rules come into play when the public is fully excluded from proceedings within a courtroom." State v. Lormor, 172 Wn.2d 85, 92, 257 P.3d 624 (2011). "[A] 'closure' of a courtroom occurs when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." Lormor, 172 Wn.2d at 93.

Here, when the trial judge initially made the ruling, he said, "The courtroom will be excluded from those family members . . . ." Additionally, the minutes provide, "The family members are asked to leave the courtroom so that we can interview juror #51." After the questioning of Juror 51, the court asked the rest of the panel if they had also heard the family members talking. The court stated, "I'm going to hold back bringing in the observers at this point in time until we can inquire as to the other jurors, but I want the record to reflect our courtroom is not locked. It's open to other individuals . . . ." The record shows the judge, lawyers for all parties, and defendants were present in the courtroom during the questioning. The court specified that it did not lock the doors and that observers other than the family members could watch the proceedings. The court indicated it intended only for the family members to leave and nothing in the record indicates any additional individuals also left. As the court did not fully

5

exclude the public from the courtroom, a closure did not occur. See Lormor, 172 Wn.2d at 93.

Nevertheless, a trial court must exercise caution when removing a spectator. Lormor, 172 Wn.2d at 94. The court should "articulate the reasons [for removal] on the record, and tak[e] into particular account the defendant's right to have family present." Lormor, 172 Wn.2d at 94.

The court in this case complied with these requirements before removing the family members. The court explained it decided to remove the family members so the juror could speak freely about what she had heard them saying. By doing so, the court sought to protect Franklin's right to an impartial jury. Moreover, the court excluded the family only for this limited purpose and allowed them to return afterwards. This demonstrates the court exercised the required caution. The trial court did not err by removing the family members.

B.    Search Warrant

Franklin next argues the trial court erred by denying his motion to suppress evidence from his cell phone pursuant to an overly broad search warrant. The State disputes this, arguing the search warrant specified the crime being investigated.

Franklin was in the Ford SUV involved in the drive-by shooting at issue in this case. Franklin, No. 42027-9-II, slip op. at 4, 12. Several witnesses observed gun shots from the Ford SUV fired at a vehicle owned and driven by John Morris. Franklin, No. 42027-9-II, slip op. at 4-5. No one in Morris's vehicle was harmed in the drive-by shooting. Franklin, No. 42027-9-II, slip op. at 4. Morris and the

other occupants of his vehicle then fled the scene, drove to Kyle Ragland's car, and opened fire in a separate drive-by shooting. Franklin, No. 42027-9-II, slip op. at 4, n.4. Ragland died as a result of injuries suffered in the incident. Franklin, No. 42027-9-II, slip op. at 4, n.4.

The police obtained a warrant to search several cell phones for evidence in connection with the murder of Kyle Ragland.[4] Johnson filed a motion to suppress cell phone evidence on the grounds that the search warrant at issue was overbroad. The motion argued the affidavit supporting the warrant failed to establish a connection between the crimes charged and all of the cell phones searched. Franklin moved to adopt all motions and memoranda filed by his co-defendant Johnson.

With regard to cell phones other than Jerome Kennedy's, the affidavit provided, "Mardre Combs confirmed during an interview that he was contacted via phone by the occupants of the white Ford Explorer prior to arriving at the gas station on 72nd Street." The affidavit further stated:

> Your affiant has received numerous levels of cellular forensic training and is a certified Mobile Forensic Cell Phone Examiner. The combination of this specific training and work on several violent crimes where cell phones were used has had consistent results. The results are that cell phones document geographically where they are when being used. This also includes a date and time. They also are a preferred method of society communication, and are used by most everyone. The devices typically have the ability to store text, images, and other data. Among past findings (on the actual handset) have been gang images, confessions through text, weapon images, call history to associates/victims and other stored criminal notations.

---

[4] The State did not charge Franklin with any crime related to this second drive-by shooting. Franklin, No. 42027-9-II, slip op. at 4, n.4.

7

Your affiant has also located deleted data on handsets that has been used in the criminal investigations.

Pursuant to the affidavit, the court granted a search warrant for "[a]ny and all data to include secondary storage and Deleted data that includes but is not limited to call history, SMS/MMS content, sound, video and image files, and proprietary files for cellular handsets . . . 2 Blackberry's - both Model 8320 (Titanium) . . . ." Franklin owned one of the BlackBerry phones. The court denied the motion to suppress.

"A warrant can be 'overbroad' either because it fails to describe with particularity items for which probable cause exists, or because it describes, particularly or otherwise, items for which probable cause does not exist." State v. Maddox, 116 Wn. App. 796, 805, 67 P.3d 1135 (2003) (footnote omitted).

Assuming, without deciding, that the search warrant was overbroad, Franklin must also show the error caused actual and substantial prejudice by a preponderance of the evidence. Davis, 152 Wn.2d at 671-72.

Franklin fails to explain how any evidence admitted pursuant to the warrant prejudiced him. Instead, he asserts "[t]he prosecution rested its case on stacking together threads of evidence that alone would not have proved Mr. Franklin's involvement." This does not demonstrate that any evidence from the phone caused Franklin actual and substantial prejudice by a preponderance of the evidence. Accordingly, we reject Franklin's argument on these grounds.

C.    Jury Instruction No. 17

Franklin next claims the jury instruction defining knowledge misstated the law. We disagree.

8

The challenged jury instruction provided as follows:

INSTRUCTION No. 17

A person knows or acts knowingly or with knowledge with respect to a fact when he or she is aware of that fact. It is not necessary that the person know that the fact is defined by law as being unlawful or an element of a crime.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

Franklin contends the instruction misstated the definition of knowledge.

Washington statutory law defines "knowledge" in the criminal context as follows:

A person knows or acts knowingly or with knowledge when:

(i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or

(ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

Franklin argues the instruction ran afoul of the definition, stating the statute "requires that the fact be described by criminal statute, not that the fact itself be described as a crime." However, the instruction followed the Washington Pattern Jury Instruction[5] concerning knowledge. See

_____

[5] Pattern jury instructions "are drafted and approved by a committee that includes judges, law professors, and practicing attorneys." State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007). Thus, "pattern instructions generally have the advantage of thoughtful adoption and provide some uniformity in instructions throughout the state." Bennett, 161 Wn.2d at 308.

9

WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02 (4th Ed) (WPIC). In State v. Leech, 114 Wn.2d 700, 710, 790 P.2d 160 (1990), the Washington Supreme Court approved of the language in the second edition of WPIC 10.02. Later editions of the instruction did not contain substantive amendments. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02 (4th Ed) (WPIC).

A comment to WPIC 10.02 states:

**Modification of statutory definition.** The instruction is based largely on the statutory definition of "knowledge." RCW 9A.08.010(1)(b); RCW 9A.08.010(2).

The instruction varies from the statutory language in several regards. First, *the instruction no longer includes the statutory limitation that the fact, circumstance, or result be one that is "described by a statute defining an offense." RCW 9A.08.010(1)(b). This phrase adds nothing to what the jurors need to understand about the knowledge requirement and unnecessarily complicates the instruction.*

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02 (4th Ed) (WPIC) (emphasis added).

We agree with the comment that the phrase, "described by a statute defining an offense," unnecessarily complicates the definition. "The court need not include specific language in a jury instruction, so long as the instructions as a whole correctly state the law." Boeing Co. v. Key, 101 Wn. App. 629, 633, 5 P.3d 16 (2000). Accordingly, the instruction did not violate Franklin's due process rights.

D.    Evidence of Gang Involvement

Franklin challenges the gang evidence introduced at his trial.  He claims admission of the evidence violated both ER 404(b) and the First Amendment.  We do not address the ER 404(b) claim because it was resolved in Franklin's direct appeal.  Franklin's First Amendment claim fails because the direct appeal determined the gang evidence had a sufficient nexus to the charged crimes.

On a personal restraint petition, appellate courts "will not review issues previously raised and resolved on direct review."  In re Pers. Restraint of Gentry, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999).  "[Courts] take seriously the view that a collateral attack by PRP on a criminal conviction and sentence should not simply be a reiteration of issues finally resolved at trial and direct review. . . ."  Gentry, 137 Wn.2d at 388.  Instead, the petition should address new points of law or fact that the defendant did not raise or could not have raised in the direct appeal.  Gentry, 137 Wn.2d at 388-89.

If a petition argues issues previously raised and decided on direct review, the court will not address them unless the petitioner demonstrates "the ends of justice will be served by reexamining the issue."  Gentry, 137 Wn.2d at 388.  A petitioner meets this burden if he or she demonstrates an intervening change in law or other justification.  Gentry, 137 Wn.2d at 388.

First, Franklin contends the court should not have admitted evidence of his gang involvement under ER 404(b).  However, the direct appeal resolved this issue.  The court determined that the gang evidence was admissible under ER

11

404(b) "to show motive." Franklin, No. 42027-9-II, slip op. at 18-19. Franklin has not provided any justification as to why we should address the issue again.

Second, Franklin claims the admission of the evidence violated his First Amendment right to freedom of association. Franklin asserts "the trial court abused its discretion when it allowed witnesses to testify regarding gangs and in the case of Detective Ringer, about gang culture, because the State did not show a nexus between the evidence and the crimes alleged." Again, the direct appeal addressed the nexus issue, albeit under a different legal argument. As part of its analysis under ER 404(b), the court determined:

> At trial, gang-expert Ringer also testified that a gang member or associate can achieve status by doing "drive-by shootings" on a rival gang; and if such member or associate does not "step up" and help retaliate when asked, he will be perceived as "weak" and will be "checked" by members of his own gang. 12 VRP at 1464, 1487, 1488. This testimony connected Franklin's and Johnson's gang affiliations, as well as Kennedy's, to the charged crimes. We hold, therefore, that there was a sufficient nexus between Franklin's and Johnson's gang affiliations and the charged crimes.

Franklin, No. 42027-9-II, slip op. at 21.

Because the direct appeal already resolved the issue of whether a nexus existed between the gang evidence and the charged crimes, we do not reconsider the issue. The existence of a nexus defeats Franklin's claim under the First Amendment. See Davis, 152 Wn.2d at 670-71 (noting that recasting an issue already addressed within a new claim does not constitute a new ground for relief).

Accordingly, we reject the arguments that the admission of the gang evidence violated ER 404(b) and the First Amendment.

12

E.    Improper Opinion Testimony

Franklin argues Detective Ringer's testimony—that "[a]lmost 100 percent of the time, a gang individual, gang member, is not going to be totally honest with law enforcement in an interview"—constituted impermissible opinion testimony.[6]

At trial, the prosecution questioned Detective Ringer about Kennedy (and not Franklin) contacting a different detective to discuss the night of the drive-by shooting. Detective Ringer testified as follows:

Q:    In regard to this intimidation factor,[7] now considering there are gang overtones that you already realized, I assume, by June 1st -- bandannas, drive-by shooting, individuals involved, et cetera -- were you concerned about the veracity, I guess, of a gang person, Mr. Kennedy, giving you truthful information?

A:    Definitely.

Q:    Is there in your experience an adverse effect to when a gang member talks, whether they're being truthful or not, to law enforcement?

A:    Almost 100 percent of the time, a gang individual, gang member, is not going to be totally honest with law enforcement in an interview. There are still many factors affecting them. The whole culture of gangs says you don't cooperate with the police. You certainly don't talk honestly with the police. You don't snitch. You don't tell on fellow gang members even if you're a victim. You tend -- the gang culture says you don't talk with the police, you don't cooperate.

So generally when we find a gang member who's willing to talk, we approach it very sort of apprehensively as far as whether he's

---

[6] Franklin's co-defendant, Johnson, raised the issue on direct appeal. Because he did not object to the testimony at trial, the court considered whether the error constituted manifest constitutional error. The court concluded the testimony did not prejudice Johnson because, as he did not testify, his credibility was not at issue. Additionally, the court determined the statement did not directly or indirectly comment on Johnson's truthfulness. Franklin, No. 42027-9-II, slip op. at 34-38.

[7] Detective Ringer had just testified the police will often interview someone without recording, before taking a recorded statement, because a recorder can be intimidating.

going to tell the truth or not. We take everything with a grain of salt. We work through the issues and try to get as much truth out as possible, but we go in anticipating that they're not going to be truthful with us.

"Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant." State v. Demery, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). Trial courts should exclude such testimony because it invades the province of the jury. Demery, 144 Wn.2d at 758. An officer's testimony as to his or her perception of a person's truthfulness in relation to explaining interview protocols does not constitute impermissible opinion testimony. Kirkman, 159 Wn.2d at 931.

In State v. Kirkman, the Washington Supreme Court upheld admission of testimony from a detective that he had engaged in a "preliminary competency protocol" to determine a child's ability to tell the truth, and that the child had promised to tell him the truth in their pretrial interview. 159 Wn.2d at 923. When the defendant challenged the testimony as an improper opinion, the Court decided the detective's testimony "[was] simply an account of the interview protocol he used to obtain [the child]'s statement. . . . By testifying as to this interview protocol, [the detective] 'merely provided the necessary context that enabled the jury to assess the reasonableness of the . . . responses.'" Kirkman, 159 Wn.2d at 931 (citing Demery, 144 Wn.2d at 764).

Here, Detective Ringer did not testify as to Franklin's credibility. Instead, in the context of discussing Kennedy, he stated he is often skeptical of whether a gang member who initiates contact with the police is going to tell him the truth. Detective Ringer did not say gang members can never be trusted, but rather that

14

he "work[s] through the issues" to make sure his investigation is premised on accurate information. Detective Ringer's testimony, like the testimony in Kirkman, related to his interview protocol in assessing and utilizing voluntary statements from gang members in his investigation. This does not constitute impermissible opinion testimony.

Moreover, Detective Ringer's statement only addressed statements made during interviews the police conduct while investigating a crime. This did not bear on whether Detective Ringer thought Franklin would testify truthfully at trial. Accordingly, we conclude Detective Ringer did not give improper opinion testimony.

F.    Prosecutorial Misconduct

Franklin claims the prosecutor committed misconduct by (1) referring to improper opinion testimony, (2) implying Franklin acted as the shooter, and (3) suggesting the trial was a search for truth. The State argues that none of the prosecutor's statements during closing argument amounted to misconduct. We determine the prosecutor did not commit misconduct.

A prosecutor's misconduct may deny a defendant his or her right to a fair trial. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). "A personal restraint petitioner raising a prosecutorial misconduct claim must prove the misconduct was either a constitutional error resulting in actual and substantial prejudice or a fundamental defect resulting in a complete miscarriage of justice." In re Pers. Restraint of Phelps, 190 Wn.2d 155, 165, 410 P.3d 1142 (2018).

Where a defendant does not object to alleged misconduct at trial, courts consider the claim waived "unless the misconduct is 'so flagrant and ill-intentioned that it cause[d] an enduring and resulting prejudice that could not have been neutralized by a curative instruction.'" Phelps, 190 Wn.2d at 165 (quoting In re Pers. Restraint of Lui, 188 Wn.2d 525, 539, 397 P3d 90 (2017) (alteration in original). Courts determine a prosecutor's actions constituted flagrant and ill-intentioned misconduct "only when it crosses the line of denying a defendant a fair trial." Phelps, 190 Wn.2d at 166. The Supreme Court has found flagrant and ill-intentioned misconduct "in a narrow set of cases where [the Court was] concerned about the jury drawing improper inferences from the evidence, such as those comments alluding to race or a defendant's membership in a particular group, or where the prosecutor otherwise comments on the evidence in an inflammatory manner." Phelps, 190 Wn.2d at 170.

First, Franklin claims the prosecutor relied on improper opinion testimony in his closing argument. Franklin fails to point to any specific portion of the closing argument that addressed the portion at issue of Detective Ringer's testimony. The prosecutor's closing argument did not discuss Detective Ringer's testimony that "[a]lmost 100 percent of the time, a gang individual, gang member, is not going to be totally honest with law enforcement in an interview."

Second, Franklin challenges the prosecutor's statement that "Mr. Franklin, but for the position in the vehicle, he's the shooter. He certainly had knowledge, he certainly had motive." Franklin argues this "misstated and distorted the evidence in a manner that was both flagrant and so prejudicial it could not have

16

been cured by instruction from the court by strongly implying the [sic] either he was the actual shooter or 'could have been' the shooter."

Courts give prosecutors wide latitude to argue reasonable inferences from the evidence. Glasmann, 175 Wn.2d at 704. Under the prosecutor's theory of the case, four men—Franklin, Johnson, Kennedy, and Conrad Evans—had gotten together that night to retaliate against a rival gang. The prosecutor argued the group did not know each other very well, but all went out together because they planned the drive-by shooting and cover up. The prosecutor's inference that Franklin willingly participated in the drive-by shooting and would have been willing to shoot at Morris's car had he been on the right side of the vehicle was not unreasonable and does not rise to the level of flagrant and ill-intentioned conduct. While perhaps not artfully phrased, the prosecutor's argument did not depict Franklin as the shooter; he clearly prefaced the statement with "but for his position in the vehicle." Even Franklin recognizes the prosecutor fell short of saying he acted as the shooter.

Finally, Franklin contends the prosecutor committed misconduct by suggesting that the trial was a search for the truth. However, the prosecutor did not necessarily make such a suggestion. The prosecutor argued as follows:

> Now remember, the first thing I asked an individual in the jury selection was, if you're chosen to be on this jury, how important would it be for you to return a verdict that represents the truth about what happened. Everybody said, that's what we're here for. That's justice, that's our system. You can't get a correct decision unless you get the truth about what happened.
>
> Well that's not exactly accurate. It's certainly in principle and whatever everybody meant, of course, we all agree with. But, in

reality, this is the truth you have to decide. This is what you're here for is the truth of the elements, the truth of the charges as the Court read.

So in this to convict, it says, under No. 1, on the 31st day of May, 2009, the defendant or an accomplice assaulted Benjamin Grossman. You have to find the truth of that beyond a reasonable doubt. If in any one of these elements, you can't come to a truth that was proved, then it's not guilty.

The prosecutor's argument accorded with Jury Instruction No. 2, which stated, "If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." The prosecutor explained that a jury does not search for the truth about what happened, but the truth about the elements or charges. While the prosecutor's statements verged on the problematic, they fell short of distorting the role of the jury or the prosecutor's burden. See State v. Berube, 171 Wn. App. 103, 120-21, 286 P.3d 402 (2012) (finding statement that "The word verdict means to speak the truth. And I ask that you search for the truth. When you go back into that jury room, you search for the truth, not a search for reasonable doubt. And I ask that you find him guilty" misstated prosecutor's burden and constituted misconduct).

Here, by failing to object to any of the foregoing statements at issue, Franklin waived his claim of prosecutorial misconduct. None of the statements rise to the level of flagrant and ill-intentioned conduct causing an enduring prejudice to Franklin that could not have been cured by a curative instruction.

G.    Ineffective Assistance of Counsel

Lastly, Franklin claims ineffective assistance of counsel. He argues his trial counsel was ineffective for failing to object to prosecutorial misconduct. He

18

also asserts his appellate counsel represented him ineffectively for failing to raise the public trial right issue in his direct appeal. We conclude neither trial nor appellate counsel performed ineffectively.

To make a successful claim for ineffective assistance of counsel, the petitioner must show that counsel performed deficiently and that it resulted in prejudice. State v. Salas, 1 Wn.App.2d 931, 949, 408 P.3d 383 (2018). The deficiency element requires that the attorney's performance fell below an objective standard of reasonableness based on the circumstances. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). To establish prejudice, "there [must be] a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceedings would have been different." In re Pers. Restraint of Rice, 118 Wn.2d 876, 889, 828 P.2d 1086 (1992).

Because we conclude the State did not commit prosecutorial misconduct and the trial court did not violate Franklin's right to a public trial, his ineffective assistance of counsel claims necessarily fail. See Phelps, 190 Wn.2d at 169, n.7.

We deny Franklin's petition.

_Chun, J._

WE CONCUR:

_Leach, J._          _Dwyer, J._

19